UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

U.S. BANK NATIONAL ASSOCIATION, *not
in its individual capacity but solely as trustee for
the RMAC Trust, Series 2016-CTT*,

                Plaintiff,                          **REPORT AND
RECOMMENDATION**
19 CV 0783 (DLI) (CLP)

      - against -

RYSZARD KOZIKOWSKI, *et al.*,

                Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

      On February 8, 2019, plaintiff U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT ("U.S. Bank Ass'n" or "plaintiff"), commenced this foreclosure action against Ryszard Kozikowski, Anna Chelstowska, Czeslaw Chelstowski (collectively, the "individual defendants"), the Clerk of the Suffolk County District Court, and the Clerk of the Suffolk County Traffic and Parking Violations Agency, seeking to foreclose on a mortgage encumbering 99 Wilson Avenue, Amityville, New York 11701, a/k/a 99 Wilson Avenue, Amity Harbor, New York 11701. (ECF No. 1)

      Currently pending before this Court on referral from the Honorable Dora L. Irizarry is plaintiff's renewed motion for default judgment. For the reasons set forth below, it is respectfully recommended that plaintiff's motion be granted in part and denied in part.

1

FACTUAL AND PROCEDURAL BACKGROUND[1]

The Complaint alleges that on October 19, 2006, defendant Kozikowski entered into a mortgage agreement in the amount of $290,800.00, encumbering a property located at 99 Wilson Avenue in Amityville, New York (the "Property"). (Compl.[2] ¶¶ 13, 14). The Mortgage was also executed by the two other individual defendants. (Id. ¶ 14). The interest rate on the principal was 7.375%. (Fourtner Decl.,[3] Ex. B at 4). Thereafter, on March 29, 2016, Kozikowski executed a Loan Modification Agreement. (Compl. ¶ 17). The Loan Modification Agreement established a new principal balance for the Note of $566,061.15, with $396,242.80 as principal bearing interest at a rate of 3.9% beginning January 1, 2016; the remaining $169,818.35 was deferred, non-interest-bearing principal. (Fourtner Decl., Ex. B at 40). The first payment under the modified loan was due on February 1, 2016, prior to the execution of the modification. (Id.) The Mortgage was assigned to plaintiff as Trustee for the RMAC Trust, Series 2016-CTT in July 2016. (Compl. ¶ 18; Younger Aff.,[4] Ex. 4).

Plaintiff alleges that the individual defendants failed to make the payment due on February 1, 2016, and subsequent payments. (Compl. ¶ 19). Therefore, plaintiff alleges that as of the filing of the Complaint, it is owed: (1) $396,242.80 in principal; (2) interest on this principal accruing at a rate of 3.9% from January 1, 2016; (3) $169,818.35 of deferred principal balance that does not accrue interest; and (4) "late charges, monies advanced for taxes,

---

[1] The relevant facts underlying plaintiff's Complaint are set forth more fully in this Court's previous Report and Recommendations, dated October 29, 2020, and May 10, 2022.
[2] Citations to "Compl." refer to the plaintiff's Complaint, filed February 8, 2019 (ECF No. 1).
[3] Citations to "Fourtner Decl." refer to the declaration of Tracy M Fourtner, plaintiff's counsel, dated June 6, 2023 (ECF No. 59).
[4] Citations to "Younger Aff." refer to the Affidavit of Anthony Younger, dated March 23, 2023 (Fourtner Decl., Ex. F; ECF No. 59-6).

2

assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure." (Id. ¶ 20).

Plaintiff brought this action seeking a judgment accelerating the maturity of the debt and determining the damages owed to plaintiff. (Id. at 4). Plaintiff also seeks appointment of a referee to oversee the sale of the Property, with proceeds going toward plaintiff's damages. (Id.)

Defendants were properly served, but failed to file an answer or otherwise respond to the Complaint, and thus a default was entered on April 25, 2019. (See ECF Nos. 9-15).

The motion currently pending before the Court is plaintiff's third motion for default judgment. The first was filed on October 16, 2019. This Court issued a Report and Recommendation on October 29, 2020, recommending that the default judgment be denied without prejudice to renew, and that the case be stayed pending resolution of the Schiffman case, where the Second Circuit had certified two questions to the New York Court of Appeals. (See ECF No. 25); CIT Bank N.A. v. Schiffman, 948 F.3d 529 (2d Cir. 2020). On March 31, 2021, the District Court adopted the Report and Recommendation, with the modification that the case would be administratively closed instead of stayed. (ECF No. 35).

Following the Second Circuit's resolution of the Schiffman case, plaintiff moved to reopen this case, and the motion was granted. Plaintiff then filed a second motion for default judgment on October 5, 2021. This Court issued a Report and Recommendation on May 10, 2022, recommending that the motion be denied for (1) failing to prove that notice was provided to the defendants as required by the New York Property Actions and Proceedings Law ("RPAPL") § 1304 and federal precedents, and (2) failing to provide sufficient proof of damages. (See ECF No. 48). The District Court affirmed in part and denied in part the Report and

3

Recommendation on September 30, 2022. The Order found that plaintiff's failure to establish compliance with RPAPL § 1304 should not be considered sua sponte and thus would not prevent plaintiff from prevailing on its motion for default judgment; the court further found that plaintiff had established liability against the individual defendants. (See ECF No. 52 at 7). However, the court found that plaintiff had failed to establish liability against the Suffolk County defendants and failed to submit sufficient evidence to substantiate its damages request. (Id. at 13-18). Therefore, the motion was denied without prejudice to renew "upon the submission of additional evidence to substantiate the requested damages." (Id. at 7).

The instant motion was filed on June 12, 2023. Plaintiff submitted additional supportive documentation on August 9, 2023.

## DISCUSSION

I. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

4

The Second Circuit has cautioned that since a default judgment is an "extreme sanction[,]" it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL

5

316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants. See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012).

The burden is on the plaintiffs to establish their entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See id. For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

II.     Default Determination

In this case, it is beyond dispute that defendants are in default. Defendants have failed to file an Answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (observing that "[the defendant's] default is crystal clear—it does not even oppose this motion"). While a defaulting defendant admits all well-pleaded factual allegations apart from those relating to damages, it remains incumbent on the Court to review the allegations in the complaint to determine if plaintiff has met her burden to ensure the elements of each claim have been pleaded adequately. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

6

III.     Mortgage Foreclosure Actions

On September 30, 2022, the District Court analyzed the three elements required to foreclose on a mortgage and found that plaintiff had established liability against the individual defendants. (See ECF No. 52 at 12-13). However, the court found that plaintiff had failed to establish liability against the Suffolk County defendants. (Id. at 13-14).

"'[T]o adequately allege liability as to a non-mortgagor defendant and extinguish their interest in a property, the complaint must allege 'nominal liability' – that any judgments the non-mortgagor defendant has against the mortgagor defendant, if asserted as a lien on the mortgage property, is subordinate to the plaintiff's lien.'" Courchevel 1850 LLC v. Rodriguez, No. 17 CV 6311, 2019 WL 2233828, at *7 (E.D.N.Y. May 22, 2019). The Complaint contains allegations of nominal liability on the part of the Suffolk County defendants. (Compl. ¶¶ 7, 8). In its renewed motion for default judgment, plaintiff has now provided evidence, in accordance with the District Court's September 30, 2022 Order, showing the alleged subordinate liens held by defendant Clerk of the Suffolk County District Court and defendant Clerk of the Suffolk County Traffic and Parking Violations Agency. (Fourtner Decl., Ex. N); see also CIT Bank, N.A. v. Metcalfe, No. 15 CV 1829, 2017 WL 3841843, at *7 (E.D.N.Y. Aug. 17, 2017), report and recommendation adopted, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017) (holding that detailed facts regarding a government lien are required for default judgment against the lien holder under New York law). Given that the Suffolk County defendants were properly served (see ECF Nos. 12, 13), but failed to answer the Complaint, plaintiff has established liability against these defendants and their interest in the subject property is extinguished.

7

IV.     Damages Calculation

Plaintiff seeks an award of damages equal to "the unpaid principal balance, unpaid accrued interest, deferred principal balance, late charges, hazard insurance disbursements, property inspection disbursement and title search disbursement." (Pl.'s Mem.[5] at 14). Plaintiff also requests "costs and disbursements in connection with the commencement and prosecution of this action" as set forth in the Note, Mortgage, and Loan Modification Agreement. (Id. at 15). In support of plaintiff's renewed request for damages, plaintiff has provided the affidavit of Anthony Younger, an Assistant Secretary of Rushmore Loan Management Services LLC ("Rushmore Loan Management"), Appointed Attorney In Fact for plaintiff as trustee, who is familiar with the business records of Rushmore Loan Management. (Pl.'s Mem. at 12 (citing Fourtner Decl., Ex. F)); Younger Aff. ¶¶ 1, 2). Plaintiff has also provided a supplemental affidavit from Anthony Younger. (Younger Supp. Aff.[6]).

A. Award of Principal

The mortgage was assigned to plaintiff on July 5, 2016. (Younger Aff., Ex. 4). According to the affidavit submitted by Anthony Younger, plaintiff is owed $396,242.80 in unpaid, interest-accruing principal, and $169,818.35 in deferred principal. (Younger Aff. ¶ 11). These amounts exactly correspond to the full amounts owed under the Loan Modification Agreement signed March 29, 2016, which plaintiff provides in the supporting materials. (Fourtner Decl., Ex. B at 40). Plaintiff contends that the provided business records demonstrate

---

[5] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of Motion for Default Judgment of Foreclosure and Sale and Related Relief (ECF No. 58).
[6] Citations to "Younger Supp. Aff." refer to the Supplemental Affidavit of Anthony Younger dated August 8, 2023 (ECF No. 65).

8

that the individual defendants defaulted on their obligation to make payments under the Loan Modification Agreement. (Younger Aff. ¶ 7).

Although the amounts of interest-accruing and deferred principal requested in the motion for default judgment match those in the Loan Modification Agreement, it is unclear how the provided transaction records from prior to the modification support the request. Plaintiff provides a "Detail Transaction History" spreadsheet from Nationstar Mortgage LLC, the prior mortgage holder, which includes transactions from August 17, 2008, to June 8, 2016. (Younger Aff., Ex. 5). The records include a "NEW LOAN" issued on October 19, 2012, in the principal amount of $286,106.40.[7] (Id.) The transaction records also list the amount of principal from August 2008 through September 2015 as $286,106.40. If indeed the principal amount remained constant at $286,106.40 from 2008 through September 2015, it is unclear what the purpose was for the "New Loan" issued in 2012. (Id.) According to the transaction records, three payments were made in October and November of 2015, reducing the principal from $286,106.40 to $285,351.42. (Id.) There are many transactions listed on March 31, 2016, comprising the loan modification. (Id.) Although the modification was likely a restructuring of the amount of unpaid principal and unpaid interest from the original loan, plaintiff has not provided any explanation of how these modification amounts were calculated or how the March 31, 2016 transactions reflect these calculations. However, it is clear that beginning on March 31, 2016, the principal amount owed is listed as $396,242.80. After that date, there are no subsequent payment transactions by

---

[7] The District Court previously raised this "New Loan" notation as a concern in the Court's September 30, 2022 Order, and directed plaintiff to provide an explanation. (ECF No. 52 at 15-16). Despite the Court's Order, plaintiff still has not provided an explanation in its new filings.

defendants, supporting plaintiff's assertion that the individual defendants defaulted on the loan. (Id.)

Although the transaction records are not clear as to what transpired prior to the institution of the Loan Modification Agreement, the Agreement and the transaction records from the time of modification onward establish the proper amount of the unpaid principal.

Having reviewed the plaintiff's submissions in support of its motion for damages, the Court respectfully recommends that plaintiff be awarded $396,242.80 in interest-bearing principal owed on the mortgage, and $169,818.35 in deferred principal, subject to plaintiff supplying an additional affidavit and supporting documents explaining the pre-modification records, including the "NEW LOAN" amount, as previously Ordered by the District Court. Even though plaintiff might have limited information regarding these records, having been assigned the mortgage after the modification, that does not excuse plaintiff's failure to provide an explanation of these records, particularly given the District Court's previously stated concerns.

B. Award of Interest

In addition to unpaid principal, plaintiff requests that the Court award damages for interest that has accrued from January 1, 2016 until February 19, 2023 at a rate of 3.900%, totaling $110,224.24. (Younger Aff. ¶ 11). There is an Amortization Schedule provided through July 1, 2023. (Id.) Plaintiff's damages request is consistent with the provided rate.

Having reviewed plaintiff's submissions in support of it motion for damages, the Court respectfully recommends that plaintiff be awarded $110,224.24, representing past-due interest

owed, subject to plaintiff's submission of the supplemental information needed to understand the calculation of principal.

    C. Other Damages

Plaintiff requests $946.27 in late charges, $30,661.75 in hazard insurance disbursements, $96,159.99 in tax disbursements, $2,244.00 in property inspections/ preservation disbursements, and $325.00 in title search disbursement. Plaintiff also requests $1,680.33 in legal costs.

Regarding late charges, it appears that each charge is $32.63. (Younger Aff., Ex. 5). Therefore, plaintiff is requesting damages from 29 different charges. However, the "Customer Account Activity Statement" from Rushmore Loan Management Services, which covers August 2016 to August 2021, includes over 40 such charges. (Younger Aff., Ex. 5). It is unclear why all of these charges are not included in the damages request. However, since the amount requested is lower than the total late fee amount listed in the account records, the Court recommends that plaintiff be awarded this lower amount.

With respect to plaintiff's request for $30,661.75 in hazard insurance disbursements, the Younger Affidavit lists each hazard insurance disbursement, beginning in September 2016 and ending in February 2023. Plaintiff explains that the hazard disbursements include property insurance and flood insurance. (Younger Supp. Aff. ¶ 5). Most of the listed disbursements directly correspond with entries of flood insurance or hazard insurance disbursement from either the "Customer Account Activity Statement," which covers from August 2016 through August 2021, or the "Account History" spreadsheet, which covers from August 2021 through November 2022. (Younger Aff., Ex. 5). However, the Younger Affidavit lists five disbursements that postdate November 2022. Plaintiff provides evidence of hazard and flood insurance extending

11

beyond November 2022 in the Younger Supplemental Affidavit, with monthly costs of $169.00 and $240.91 respectively. (See Younger Supp. Aff., Ex. 2). The five requested amounts postdating November 2022 correspond to these monthly costs. Therefore, the Court finds that plaintiff has proven the requested hazard insurance damages and respectfully recommends that plaintiff be awarded $30,661.75 in hazard insurance disbursements.

Tax disbursements, made each May and December from 2016 to 2022, are also broken down in the Younger Affidavit. These amounts correspond to the amounts in the Younger Supplemental Affidavit, Exhibit 1, except for the May 2016 disbursement of $6,669.28. In addition to plaintiff's failure to provide support for the May 2016 disbursement in the Supplemental Affidavit, the Court notes that this disbursement was made prior to the date that the mortgage assignment to plaintiff was executed. Without further corroboration, the Court cannot recommend reimbursement for this amount. Therefore, the Court respectfully recommends that plaintiff be awarded only $89,490.71 in tax disbursements, representing the difference between the $96,159.99 in tax disbursements requested and the $6,669.28 in disbursements for which sufficient evidence has not been provided.

Plaintiff requests $2,244.00 in property inspections/preservation disbursements. It is unclear how this number was derived, as there is no itemization provided and total amounts for "Property Preservation" in the "Customer Account Activity Statement" are greater than the requested amount. (Younger Aff., Exhibit 5). There is also no further explanation of what these costs specifically entail. Therefore, the Court has insufficient information to recommend an award for these amounts at this time.

12

Plaintiff requests $325.00 in title search disbursement. Although there is one charge of $325.00 in Younger Affidavit Exhibit 5, it is entitled "Misc. F/C and B/R Expenses." It is unclear what this means. Since the affidavit does not provide a receipt for the title search, or even the date that it was conducted, the Court finds that plaintiff has not proved these damages.

Lastly, plaintiff also requests $1,680.33 in legal costs, consisting of a $400 case filing fee, $108.75 in searches, $505.00 in service, and $666.58 in fees for filing a Notice of Pendency. (Fourtner Decl., Ex. O). Plaintiff has provided invoices for the $108.75 in searches and $505.00 in service costs. (Id.) The $400 filing fee is judicially noticed. However, there is no evidence that the filing of the notice of pendency costed $666.58. Therefore, the Court respectfully recommends that plaintiff be awarded a total of proven legal costs in the amount of $1,013.75.

The recommended damages awards listed in this section are also subject to the provision of supplemental information regarding the pre-modification records.

      D. <u>Sale of the Subject Premises</u>

Plaintiff further seeks to have the Subject Premises foreclosed and sold under the direction of a Referee.

Based on a review of the terms of the Mortgage and the supporting documents submitted by plaintiff establishing the basis for the requested damages, the Court respectfully recommends the appointment of a Referee to effectuate the judgment of foreclosure and sale of the Subject Premises.

<u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully recommends that plaintiff's Motion for Default Judgment be granted in part and denied in part.

The Court respectfully recommends that plaintiff be awarded $396,242.80 in interest-bearing principal, $169,818.35 in deferred principal, $110,224.24 in past-due interest owed, $946.27 in late charges, $30,661.75 in hazard insurance disbursements, $89,490.71 in tax disbursements, and $1,013.75 in legal expenses, subject to plaintiff's further explanation of the provided pre-modification records. The Court further respectfully recommends that the foreclosure and sale of the Subject Premises proceed as set forth in the Amended Proposed Order, under the direction of a Referee.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated: Brooklyn, New York
February 28, 2024

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York